UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| GRANTVILLE MILL, LLC, | : | CASE NO. 10-10354-whd |
| | : | |
| Debtor | : | |

**MOTION FOR ENTRY OF ORDERS PURSUANT TO 11 U.S.C. §§ 105 AND 363 (A) AUTHORIZING AND SCHEDULING AN AUCTION AT WHICH THE DEBTOR WILL SOLICIT THE HIGHEST OR BEST BID FOR THE SALE OF SUBSTANTIALLY ALL OF ITS PROPERTY; (B) APPROVING BID PROCEDURES GOVERNING THE PROPOSED SALE; AND (C) APPROVING THE SALE OF THE PROPERTY TO THE PARTY SUBMITTING THE HIGHEST OR BEST BID**

NOW COMES Grantville Mill, LLC, debtor and debtor in possession herein (the "Debtor") and files this motion for entry (i) following an interim hearing (the "Bid Procedures Hearing"), of an Order (the "Bid Procedures Order") approving a sale and bidding process as hereinafter described to be used in connection with the proposed sale of the Property (as defined below), and (ii) following a final hearing (the "Sale Hearing"), of an order (the "Sale Order") approving the sale by the Debtor of the Property to the party submitting the highest and best bid for the Property in connection with the sale and bidding process (the "Motion"). In support of this Motion, the Debtor respectfully shows the Court as follows:

**Jurisdiction**

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## Background

2.      The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), on February 1, 2010 (the "Petition Date").

3.      The Debtor has continued in possession of its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

4.      The Debtor is a single purpose limited liability company that owns certain real property and improvements thereon located at 41 Industrial Way, Grantville, GA 30220, along with all the rights in and to all wells located thereon (the "Property")

5.      The Debtor has filed an application to employ GGG, Inc., as sale consultant and advisor ("GGG").

6.      The Debtor, in consultation with GGG, has determined that the best means to accomplish a sale of the Property is through an auction, with, among other things, specific procedures for bidding and overbidding. As set forth herein, prior to the Bid Procedures Hearing the Debtor may select a Stalking Horse if appropriate.

## Proposed Sale Process/Bid Procedures

7.      The Debtor, in consultation with GGG, has developed the following proposed process for selling the Property (the "Proposed Sale Process"). In connection therewith, the Debtor requests that this Court approve the Proposed Sale Process, including the following bid procedures (the "Bid Procedures"):

(i)     Initial Bid.  Any party that is interested in acquiring the Property must submit an initial bid (the "Initial Bid') in conformance with the Bid Procedures by not later than 5:00 local time in Atlanta, Georgia on or before June 11, 2010 (the "Bid Deadline").  Any such Initial Bid must:

     (a)     Contain a signed definitive asset purchase agreement, together with a copy of the signed agreement that is marked to show changes from the form

Asset Purchase Agreement attached as Exhibit "A" hereto (the "Form Agreement"), with, at a minimum, the following requirements: (i) substantially identical terms and conditions as the Form Agreement; (ii) terms and conditions no less favorable to the Debtor's estate than the terms and conditions in the Form Agreement; and (iii) not be subject to any (1) financing contingency, (2) contingency relating to the completion of unperformed due diligence, (3) contingency related to the approval of the bidder's board of directors or other internal approvals or consents, or (4) any conditions precedent to the bidder's obligation to purchase the Property other than those in the Form Agreement;

(b)     Include a cashiers' or certified check (payable to the order of Lamberth, Cifelli, Stokes, Ellis & Nason, P.A., Trust Account) representing a deposit in the amount of $250,000, it being understood that deposits may also be sent by wire transfer of immediately available funds, to be held by Debtor's counsel, Lamberth, Cifelli, Stokes, Ellis & Nason, P.A. in escrow as set forth herein and in the Form Agreement;

(c)     To the extent not previously provided to the Debtor or GGG, be accompanied by evidence satisfactory to the Debtor in its reasonable discretion that the bidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under the Asset Purchase Agreement submitted in the event that it submits the Prevailing Bid (as defined below) at the Auction (as defined below);

(d)     Remain open and irrevocable until seven (7) days after the entry of an Order by the Court approving a definitive agreement providing for the sale of the Property .The Debtor may extend the Bid Deadline without further notice and for one or more bidders, but shall not be obligated to do so.

(ii)     <u>Auction</u>.  In the event that the Debtor receives more than one conforming Initial Bid from a prospective purchaser as described above (a "Qualified Bidder"), then the Debtor will conduct an auction with respect to the sale of the Property on June 15, 2010, beginning at 10:00 a.m. local time, at the offices of the Debtor's counsel, Lamberth, Cifelli, Stokes, Ellis & Nason, P.A., 3343 Peachtree Road, NE, Suite 550, Atlanta, Georgia 30326 (the "Auction"). Based upon the terms of the Initial Bids received and such other information as the Debtor determines is relevant, the Debtor may conduct the Auction in the manner the Debtor determines will achieve the maximum realizable value for the Property. In order to participate in the Auction, each prospective purchaser shall be required to comply with the requirements of the Bid Procedures and to submit an Initial Bid that is timely and that complies in all respects with the Bid Procedures Order. At the Auction, Qualified Bidders may submit successive bids in increments of at least $50,000 greater than the prior bid (the "Incremental Bid Amount") for the purchase of the Property until there is only one offer that the Debtor determines, subject to Bankruptcy Court approval, is the highest or best offer (the "Prevailing Bid"). The second best bid, as determined by the Debtor, shall be deemed the

"Secondary Bid". The Debtor shall determine in its discretion what conforming Initial Bid is the highest and best bid to begin the Auction. All bidding for the Property will be concluded at the Auction and there will be no further bidding at the Sale Hearing. If only one conforming Initial Bid from a Qualified Bidder shall have been received at or prior to the Bid Deadline (as may be extended as set forth above), the Auction will not be held and the Sale Hearing will proceed with respect to the Asset Purchase Agreement submitted by the sole Qualified Bidder. In the event no conforming Initial Bid from a Qualified Bidder shall have been received at or prior to the Bid Deadline (as may be extended as set forth above), the Debtor will determine the appropriate course of action, including withdrawal of the Sale Motion.

(iii)   Sale Hearing.  The Sale Hearing will be conducted at 10:10 a.m. local time, on June 18, 2010 at the United States Bankruptcy Court, Lewis R. Morgan Federal Building, 2nd Floor Courtroom, 18 Greenville Street, Newnan, GA, at which time the Debtor intends to present the Prevailing Bid for approval by the Court pursuant to the provisions of sections 105 and 363 of the Bankruptcy Code. The Debtor shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing.  Upon the failure to consummate a sale of the Property after the Sale Hearing because of the occurrence of a breach or default under the terms of the Prevailing Bid, the parties shall be authorized without further Order of the Court to consummate the transaction contemplated by the backup Secondary Bid.

(iv)   Highest and/or Best Bid.  At all times during the Proposed Sale Process, the Debtor shall retain full discretion and right to determine, in its sole discretion, which bid constitutes the highest or otherwise best offer for the purchase of the Property, and which bid should be selected as the Prevailing Bid, if any, or the Secondary Bid, if any, all subject to final approval by the Court pursuant to the provisions of section 363(b) of the Bankruptcy Code. Without limiting the generality of the foregoing, the Debtor may, at any time before entry of an Order of the Court approving a Prevailing Bid, reject any bid that, in the Debtor's sole discretion, the Debtor determines is (i) inadequate or insufficient, (ii) contrary to the requirements of the Bankruptcy Code or the Proposed Sale Process, or (iii) contrary to the best interests of the Debtor, its estate or its creditors. The Debtor may adopt rules for the Auction that, in its judgment, will better promote the goals of the Auction and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court Order.

(v)   Sale Implementation.  Following the approval of the Prevailing Bid at the Sale Hearing, the Debtor will be authorized and directed to take all commercially reasonable and necessary steps to complete and implement the transaction(s) contemplated by the Prevailing Bid, including (but not limited to) seeking entry of one or more sale orders.

(vi)    <u>Application of Deposit</u>. At closing, the Deposit will be credited to the purchase price to be paid by the bidder submitting the Prevailing Bid (the "Prevailing Bidder") or, if appropriate, the Secondary Bid (the "Secondary Bidder"). The Deposit provided by the Secondary Bidder will be refunded upon closing the sale to the Prevailing Bidder.  If the Prevailing Bidder does not close by the deadline set forth in the Asset Purchase Agreement between the Prevailing Bidder and the Debtor, Lamberth, Cifelli, Stokes, Ellis and Nason, P.A. will be directed to retain the Deposit paid by the Prevailing Bidder pending further Order of the Court in accordance with the terms of such Asset Purchase Agreement, and the secondary Bidder shall thereupon be deemed the Prevailing Bidder.

(vi)    <u>Credit Bid</u>. Capital City Bank may credit bid up to the amount of its debt on the portion of the Property that is collateral for its debt.  Branch Banking & Trust may credit bid up to the amount of its debt on the portion of the Property that is collateral for its debt.

(vii)    <u>Stalking Horse</u>. The Debtor may, prior to the Bid Procedures Hearing, select a Stalking Horse Bid and may, at the Bid Procedures Hearing, request that the Stalking Horse Bidder be provided protection from an overbid. If a Stalking Horse is selected, the proposed Stalking Horse Bid will be deemed a qualified Initial Bid and the Stalking Horse Bidder will be deemed a Qualified Bidder. In such event, the deadlines set forth in the Bid Procedures will remain the same. The Stalking Horse Bidder will be entitled to a Stalking Horse Fee of $50,000 if (i) the Bankruptcy Court approves the sale, and (ii) the Debtor closes on a sale to a higher and better bidder approved by the Bankruptcy Court. In the event a Stalking Horse is selected, any initial overbid must be at least $100,000 (an amount equal to the $50,000 Stalking Horse Fee plus the Incremental Bid Amount) higher than the Stalking Horse Bid. The Stalking Horse Bidder will get a credit in bidding equal to the Stalking Horse Fee.

<b>Relief Requested</b>

8.    By this Motion, the Debtor requests that the Court grant the following relief:

(a)    the scheduling of the Bid Procedures Hearing as soon as practicable for the purpose of finalizing and approving the Proposed Sale Process and the Bid Procedures;

(b)    following the Bid Procedures Hearing, entry of the Bid Procedures Order approving the Proposed Sale Process and the Bid Procedures, including the procedures for submitting Initial Bids, conducting the Auction, and identifying the Prevailing Bid;

(c)    the scheduling of the Sale Hearing no later than June 18, 2010 to consider entry of an Order approving the sale of the Property to the highest and best

bidder pursuant to the Auction to be conducted in accordance with the procedures set forth herein and granting other related relief;

(d) following the Sale Hearing, entry of the Sale Order approving sale of the Property to the highest and best bidder and granting related relief, authorizing certain payments at closing and making the following determinations, among others, with respect to such sale:

    (i)    that such sale has been agreed upon, and will be made and completed, in good faith, for purposes of the provisions of section 363(m) of the Bankruptcy Code;

    (ii)    that such sale shall be made, and the Property shall be delivered to the Prevailing Bidder, free and clear of any and all liens, claims, encumbrances and interests, other than as specified in the Asset Purchase Agreement executed between the Debtor and the Prevailing Bidder (the "Agreement");

    (iii)    that the fourteen (14) day stay period provided for in Rules 6004(g) of the Federal Rules of Bankruptcy Procedure shall not be in effect with respect to the Sale Order and the Sale Order shall be effective and enforceable immediately upon its entry.

## Argument

9.    The Debtor believes that the Proposed Sale Process offers the best opportunity for the Debtor to maximize the value of the Property for the benefit of its estate, is in the best interests of the estate, is consistent with applicable law, and should be approved.

### Section 363(b) Authorizes the Proposed Sale and Sale Process.

10.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's property, in applying this section, courts have required that it be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented before him a good business reason to grant such application); *Committee of*

*Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)

(same); *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that

"bankruptcy court can authorize a sale of all of a chapter 11 debtor's Property under § 363(b)(1)

when a sound business purpose dictates such action"). The Debtor submits that any proposed

sale resulting from the Proposed Sale Process fits squarely within the parameters of the sound

business judgment test articulated in the above-referenced authorities.

11.    The Debtor respectfully submits that the notice and timing of the Proposed Sale

Process are adequate and fair, and are reasonably calculated to elicit the highest levels of interest

in acquiring the Property.

12.    The Debtor, through GGG, will continue to make diligent efforts to seek out all

potentially credible buyers, having already contacted numerous parties. As such, the substantial

solicitation and marketing efforts of the Debtor and its professionals support the proposed

process and the reasonableness of any offer ultimately presented through that process.

13.    Moreover, because the Proposed Sale Process will create a fair and reasonable

environment in which all legitimate and qualified interest in the Property can be presented in a

competitive, open and level playing field, any offer presented in accordance with the terms of the

Proposed Sale Process will necessarily be negotiated and presented in good faith. In connection

therewith, the Debtor will be prepared to present further evidence of good faith during the course

of the Sale Hearing that will satisfy this Court and the mandates of section 363(m) of the

Bankruptcy Code.

**Section 363(f) Authorizes the Sale Free and Clear of Liens and Other Claims.**

14.    The Debtor requests that the sale and transfer of the Property be approved free

and clear of all liens, claims, encumbrances and other interests, other than those specifically

assumed pursuant to the Agreement.  Such relief is consistent with the provisions of section

363(f) of the Bankruptcy Code in this case.

15.    Section 363(f) of the Bankruptcy Code provides that a debtor-in-possession may

sell property free and clear of any lien, claim or interest of another entity in such property if any

of the following circumstances pertain:

> *applicable non-bankruptcy law permits sale of such property free and clear of such interest;*
>
> *such entity consents;*
>
> *such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;*
>
> *such interest is in bona fide dispute; or*
>
> *such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.*

11 U.S.C. § 363(f).

16.    As indicated by the use of the disjunctive term "or," satisfaction of any one of the

five requirements listed in section 363(f) of the Bankruptcy Code is sufficient to permit the sale

of Property free and clear of liens, claims, encumbrances, pledges, mortgages, security interests,

charges, options and other interests, including any right of setoff (collectively, the "Interests").

*See In re Elliott*, 94 B.R. 343, 345 (E.D. Pa. 1988) (stating that section 363(f) is written in the

disjunctive; the court may approve a sale "free and clear" provided that at least one of the

subsections is met).

17.    In this instance, the Debtor anticipates that the Debtor's secured creditors will

each consent to the transaction presented for approval at the Sale Hearing, or be paid in full from

the proceeds.

**The Prevailing Bidder Should Be Afforded All Protections Under Bankruptcy Code
Section 363(m) as a Good Faith Purchaser.**

18.    Section 363(m) of the Bankruptcy Code provides that "the reversal or
modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or
lease of property does not affect the validity of a sale or lease under such authorization to an
entity that purchased or leased such property in good faith . . ." 11 U.S.C. § 363(m).

19.    As discussed above, the Proposed Sale Process and the Bid Procedures
contemplated as a part thereof have been designed to create a fair, open and level playing field.
Accordingly, the Debtor requests that the Prevailing Bidder be determined to have acted in good
faith and be entitled to the protections of a good faith purchaser under section 363(m) of the
Bankruptcy Code. In this regard, the Debtor submits that the transaction for which they will seek
approval was negotiated by the parties at arm's length and in good faith, and that the Prevailing
Bidder or Successful Bidder and their respective affiliates (i) are not "insiders" or affiliates of the
Debtor, and (ii) do not have any relationship to the Debtor that have not been, or will not have
been, fully disclosed to the Court.

**The Proposed Bid Procedures Are Appropriate**

20.    The Debtor, in consultation with GGG, has formulated a bidding process that it
believes will induce prospective competing bidders to expend the time, energy and resources
necessary to submit an Initial bid, and which it believes is fair and reasonable in view of the
Property to be sold.  The Proposed Sale Process is reasonable and supported by applicable case
law.

21.    Therefore, because the procedures and incentives included in the Proposed Sale
Process are fair and reasonable, and are reasonably calculated to produce the best and highest

offers for the Property and thereby confer actual benefits upon the estates herein, such procedures should be approved herein.

### Approval of Stalking Horse Fee (If Applicable)

22.     If a Stalking Horse Bid is selected prior to the Bid Procedures Hearing, the Debtor requests that the Court approve a $50,000 Stalking Horse Fee. Outside the bankruptcy context, courts commonly approve break-up/topping fees and expense reimbursements. Such fees and expense reimbursements are presumptively appropriate under the business judgment rule and nonbankruptcy courts rarely rule on their propriety. *In re Integrated Resources, Inc.*, 147 B.R. 650 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993); *see, e.g., Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't Stores, Inc.*, 683 F. Supp. 422, 440 (S.D.N.Y. 1988); *Samjens Partners I v. Burlington Indus., Inc.*, 663 F. Supp. 614 (S.D.N.Y. 1987).

23.     Similarly, bankruptcy courts are guided by the principles of the "business judgment" rule in evaluating a debtor's decision to offer bidding protections. *See, Integrated Resources*, 147 B.R. at 658 ("A bankruptcy court should uphold a break-up fee which was not tainted by self-dealing and was the product of arm's-length negotiations."); *In re 995 Fifth Ave. Ass'n*, 96 B.R. 24 (Bankr. S.D.N.Y. 1989). *See, generally, In re Tiara Motorcoach Corp.*, 212 B.R. 133, 137 (Bankr. N.D. Ind. 1997) (break-up fees "must be carefully scrutinized").

24.     "By design, a 'break-up fee' is an incentive payment to an unsuccessful bidder who placed the estate property in a sales configuration mode to attract other bidders to the auction." *Integrated Resources*, 147 B.R. at 659 (internal quotation omitted). Bidding protections for purchasers of Chapter 11 debtors and/or their assets constitute appropriate compensation for the risk and expense involved in preparing and proposing a bid, which thereby enhances the

value of the debtor's estate by attracting initial bids, establishing a minimum standard for competing bids, and establishing a template against which to bid. *See, Integrated Resources*, 147 B.R. 650, 659 (break-up fees are "important tools to encourage bidding and to maximize the value of the debtor's assets."); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 888 (Bankr. S.D.N.Y. 1990) (decision to enter into agreement including break-up fee amply justified by need to prevent prospective bidder from withdrawing from transaction). Bidding protections take many different forms, including paying the out-of-pocket expenses incurred by a bidder in arranging the deal, including due diligence expenses, or compensating a bidder for its lost opportunity costs. *See, In re Hupp Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992).

25.    A break-up fee should be "reasonably related to the bidder's efforts and the transaction's magnitude." *Integrated Resources*, 147 B.R. at 662-63. Here, the amount is reasonable in light of the anticipated sales price. Additionally, the Debtor asserts that the Debtor's proposal for incremental monetary financial requirements for competitive bids is also reasonable under the circumstances. The Debtor does not believe minimum bidding increments will chill the bidding process.

### Other Requested Relief

26.    The Debtor also requests that the Court allow the sale to be consummated immediately as authorized by Bankruptcy Rule 6004(g).

27.    The Debtor further request authority for the Debtor to use the proceeds from the sale of the Property (the "Sale Proceeds") to pay at closing (i) any and all ad valorem tax claims that constitute liens on the Property; and (ii) any and all valid and perfected liens on the Property sold. The remaining Sale Proceeds will be held in an interest bearing account by counsel for the Debtor pending further order of the Court.

## Prayer for Relief

WHEREFORE, based upon the foregoing, the Debtor respectfully requests that the Court (a) schedule the Bid Procedures Hearing as soon as practicable for the purpose of finalizing and approving the Proposed Sale Process and the Bid Procedures; (b) following the Bid Procedures Hearing, enter the Bid Procedures Order approving the Proposed Sale Process and the Bid Procedures, including the procedures for submitting Initial Bids, conducting the Auction, and identifying the Prevailing Bid; (c) schedule the Sale Hearing no later than June 18, 2010 to consider entry of an Order approving the sale of the Property to the highest and best bidder pursuant to the Auction to be conducted in accordance with the procedures set forth herein and granting other related relief; (d) following the Sale Hearing, enter the Sale Order approving sale of the Property to the highest and best bidder free and clear of Interests and granting related relief; and (e) granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 10th day of May, 2010

LAMBERTH, CIFELLI, STOKES
ELLIS & NASON, P.A.
Attorneys for Debtor


By: /s/ *G. Frank Nason, IV*
G. Frank Nason, IV
Georgia Bar No. 535160
fnason@lcsslaw.com

3343 Peachtree Road NE, Suite 550
Atlanta, GA 30326-1022
(404) 262-7373

**EXHIBIT "A" FOLLOWS**

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (the "Agreement") made and entered into as of this _____ day of May, 2010 between **GRANTVILLE MILL, LLC**, limited liability company, as debtor and debtor-in-possession (hereinafter described as "Seller"), and [_____] (hereinafter described as "Purchaser").

### W I T N E S S E T H :

The Seller is a debtor and debtor-in-possession under Title 11 of the United States Code (the "Bankruptcy Code") in a case pending under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"), captioned *In re Grantville Mill, LLC,* Case No. 10-10354 (the "Chapter 11 Case").

The Seller agrees to sell and convey and the Purchaser agrees to purchase, all of that real property and improvements thereon located at 41 Industrial Way, Grantville, GA 30220, along with all the rights in and to all wells located thereon (the "Property"),:

     (a) all and singular the rights and appurtenances pertaining thereto including but not limited to any right, title and interest of Seller in and to adjacent streets, roads, alleys, appurtenances, easements, rights-of-way and air, mineral and development rights to the extent that such right, title and interest exist, and all permits, licenses, surveys, plans, studies and contract rights related to the Property (as hereinafter defined);

     (b) all buildings and other improvements situated thereon (collectively, the "Improvements");

     (c) all personal property owned by Seller and used in the operation of the Improvements and located thereon to the extent that any exist including, but not limited to, all HVAC equipment, burglar alarms, furniture and fixtures, signage and lighting systems; and

     (d) such other rights, interests and properties as may be specified in this Agreement to be sold, transferred, assigned or conveyed by Seller to Purchaser.

The parcel of land, together with the Improvements, rights, interests and other properties described above, are collectively called the "Property."

The Bankruptcy Court must approve the transaction contemplated in this Agreement.

THEREFORE, in consideration of the premises and mutual covenants and agreements herein contained, and intending to be bound hereby, the parties hereby agree as follows:

     1.    PURCHASE PRICE AND METHOD OF PAYMENT. The "Purchase Price" that the Purchaser agrees to pay and Seller agrees to accept is [_____] ($_____) paid, all cash at

313907.doc

Closing (as hereinafter defined), by federal funds, certified check or other good funds upon Seller's delivery of a deed, bill of sale and other appropriate closing documents conveying to Purchaser good and marketable fee simple title to the Property.

2.    EARNEST MONEY.  Within three (3) business days after the execution by Seller and Purchaser of this Agreement, Purchaser shall deposit Two Hundred Fifty Thousand Dollars ($250,000) (the "Earnest Money") with Lamberth, Cifelli, Stokes, Ellis & Nason, P.A. ("Escrow Agent") to be placed in an interest bearing account. The Earnest Money shall be refunded to Purchaser in full, together with all accrued interest thereon, if (i) the Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") does not approve this Agreement; (ii) the Bankruptcy Court conducts an auction of the Property and the Property is sold to a party other than Purchaser; (iii) the Bankruptcy Court conducts an auction and Purchaser is not selected as the successful bidder or the secondary bidder; (iv) Seller defaults hereunder; (v) the conditions to Purchaser's obligation to close are not satisfied or waived by Purchaser; or (vi) as otherwise set forth herein. All interest earned on the Earnest Money shall accrue to the benefit of Purchaser. Disbursement of the Earnest Money to Seller shall only be made by order of the Bankruptcy Court.

3.    TITLE.  It shall be a condition precedent to Purchaser's obligation to close that Seller convey good and marketable, fee simple title to the Property to Purchaser at closing by limited warranty deed, without any restrictions, liens, exceptions or encumbrances of any nature.

4.    COVENANTS, WARRANTIES AND REPRESENTATIONS.

4.1    Seller's Representations, Warranties and Covenants.    Seller represents, warrants and covenants that:

(a)    Adverse Information.  No notice has been given to Seller by any insurance company which has issued a policy with respect to any portion of the Property or by any board of fire underwriters (or any other body exercising similar functions) requesting the performance of any repairs, alterations or other work which has not been complied with.

(b)    Access to Highways and Roads.  Seller has received no written notice from any governmental authority that it contemplates the termination or impairment of such access which the Property now has to a public roadway.

(c)    No Condemnation Pending or Threatened.    There is no pending condemnation or similar proceeding affecting the Property or any portion thereof, and Seller has received no written notice of any such contemplated action from any governmental authority.

(d)    Authorization.

(i)    Seller (a) has the power and authority to carry on its business as now conducted, and (b) subject to the approval of the Bankruptcy Court, has the power and authority to execute and deliver this Agreement, the deed and all other instruments to be executed and delivered by Seller in connection herewith and therewith, and to perform all of its obligations hereunder.

2

    (ii) Except for approval of the Bankruptcy Court, no consent, approval or authorization of or registration, declaration or filing with any person or entity, including without limitation any governmental authority, is required in connection with the valid execution of this Agreement or the performance of any of the transactions required or contemplated hereby or, if required, such consent, approval, authorization or registration, declaration or filing has been or shall have been obtained prior to the Closing.

    (e) <u>Zoning</u>. Seller has received no written notice that there are any proceedings, or any proposed or threatened proceedings, to change the zoning classification or land use plan or the conditions applicable to the Property.  Seller has received no written notice of any violation of any requirement or condition to such zoning classification or land use plan which is applicable to all or any portion of the Property.

    (f) <u>Parties in Possession</u>. Except for West Georgia Regional Service Educational Services Agency, there are no tenants or other parties in possession of any portion of the Property, whether as lessees or tenants at sufferance.

    (g) <u>Litigation</u>. There are no disputes, legal actions, suits or other legal or administrative proceedings, including condemnation or similar cases or proceedings, pending against the Property, or against Seller, that would affect the Property after Closing.

    (h) <u>Operation of Property</u>.  During the period between the date hereof and the Closing, Seller shall:

      (i) Comply with all state and municipal laws, ordinances, regulations and orders relating to the Property;

      (ii) Keep the Property in good condition and repair;

      (iii) Promptly notify Purchaser in writing if any material change occurs in the occupancy or physical condition of the Property; and

      (v) Provide Purchaser and its representatives, employees, and agents full and complete access, during normal business hours, to the Property.

    (i) <u>No Assessments</u>.  No assessments have been made against the Property that are unpaid (except ad valorem taxes), and which will burden the Property after Closing.

    4.2 <u>Purchaser's Representations, Warranties and Covenants</u>. Purchaser represents, warrants and covenants that:

    (a) Purchaser (a) has the power and authority to carry on its business as now conducted, and (b) has the power and authority to execute and deliver this Agreement, the deed and all other instruments to be executed and delivered by Purchaser in connection herewith and therewith, and to perform all of its obligations hereunder.

(b)      Except for the approval of the Bankruptcy Court, no consent, approval or authorization of or registration, declaration or filing with any person or entity, including without limitation any governmental authority, is required in connection with the valid execution of this Agreement or the performance of any of the transactions required or contemplated hereby or, if required, such consent, approval, authorization or registration, declaration or filing has been or shall have been obtained prior to the Closing.

4.3      Survival of Representations and Warranties.  The representations and warranties of Seller and Purchaser as set forth in this Agreement shall be true and correct as of the effective date of this Agreement and as of the date of Closing and shall survive the Closing of this transaction for a period of one hundred eighty (180) days.

5.      CONDITIONS TO CLOSING.  It shall be a condition to Purchaser's obligation to close that:

(a)      Seller's representations and warranties shall be at the time of Closing true and correct in all material respects;

(b)      The Bankruptcy Court shall have approved the sale to Purchaser and such order (i) is effective immediately notwithstanding Bankruptcy Rule 6004(g), and (ii) is either a final, non-appealable order or contains the protections of Section 363(m) of the Bankruptcy Code and has not been stayed prior to Closing;

(c)      At Closing, the Property shall be conveyed to Purchaser free and clear of all liens, claims and encumbrances;

(d)      There shall have been no material adverse change in the Property between the date hereof and the date of Closing, normal wear and tear excepted;

6.      INSPECTIONS.   Subject to the rights of the tenants, if any, Purchaser, Purchaser's agents, employees and contractors, shall have the right during regular business hours, but without interfering with operations being carried on upon the Property, to enter the Property to inspect the Property and to have prepared surveys, environmental studies, engineering reports, soils tests, title reports, and such other due diligence items as Purchaser may reasonably determine are necessary or appropriate in order to evaluate the Property.  Purchaser shall and does hereby agree to indemnify, defend and hold Seller harmless from any loss or damage suffered by Seller as a result of the exercise by Purchaser of the rights herein granted, including any damage resulting from the negligence of Purchaser or Purchaser's agents.  This indemnity shall survive the rescission, cancellation, termination or consummation of this Agreement.

7.      DAMAGE TO OR CONDEMNATION OF THE  PROPERTY.

(a)      Should the Property be destroyed or damaged before this Agreement is consummated, then, at the election of the Purchaser:  (A) this Agreement may be cancelled, in which event Purchaser shall receive a refund of the Earnest Money; or (B) Purchaser may consummate this Agreement and shall be entitled to the benefit of all insurance proceeds on the

4

claim of loss.  Purchaser shall have no responsibility for any "deductible amounts" under the policy.  This election is to be exercised by the Purchaser within ten (10) days after the amount of Seller's damage is determined and Purchaser has been notified of such amount.

(b)    All risk of condemnation of the Property or any Improvements thereon, and the loss therefrom, prior to the Closing is assumed by Seller.  In the event of condemnation, Purchaser may, at its option, elect to terminate this Agreement and this Agreement shall thereafter be null and void, or Purchaser may elect to close the transaction in which case it shall be entitled to all condemnation proceeds. This election is to be exercised by the Purchaser within fourteen (14) days after the amount of Seller's damage is determined and Purchaser has been notified of such amount.

8.    STALKING HORSE FEE.  In the event this Agreement is approved by the Bankruptcy Court as a Stalking Horse Bid, and if the Bankruptcy Court approves a sale of the Property to a higher or better bidder at auction or otherwise once this Contract has been executed by Seller and approved by the Bankruptcy Court and such sale closes, Purchaser shall, in addition to a refund of its Earnest Money deposit be paid a fee equal to Fifty Thousand and No/100 Dollars ($50,000.00) in consideration of its effort and expenses incurred in pursuing the purchase of the Property.

9.    DEFAULT REMEDIES.  In the event the sale is not closed because of Seller's inability, failure or refusal to perform any of Seller's obligations herein, Purchaser shall have the right to cancel this Agreement in which event the Escrow Agent shall return the Earnest Money to Purchaser, or Purchaser may seek specific performance of this Agreement. Subject to the satisfaction or waiver of any conditions precedent to Purchaser's obligation to Close, in the event Purchaser should fail to consummate the transaction contemplated herein for any reason except Seller's default, Seller shall, as its sole and exclusive remedy hereunder, be entitled to receive the Earnest Money, such sum being agreed upon as liquidated damages for the failure of Purchaser to perform the duties, liabilities and obligations imposed upon it by the terms and provisions of this Agreement and because of the difficulty, inconvenience and uncertainty of ascertaining actual damages, and no other damages, rights or remedies shall in any case be collectible, enforceable or available to Seller other than as provided in this paragraph.  Seller agrees to accept and take the Earnest Money as its total damages and relief hereunder in such event and shall have no other cause of action against Purchaser. It is the express intent of this paragraph that there shall be no personal liability whatsoever on the part of Purchaser under this Agreement (except for Purchaser's failure to deliver the Earnest Money to Escrow Agent as required hereunder) and only the Earnest Money may serve as security for any payment, including, without limitation, the Purchase Price. Without in any way limiting the generality of the foregoing, but in furtherance thereof, under no circumstances shall Seller be entitled to specific performance as a remedy under this Agreement.

10.    CLOSING ADJUSTMENTS; COSTS.  All property taxes, insurance, rents, and utilities, shall be prorated as of the date of the closing.  Seller shall pay the State of Georgia property transfer tax, Seller's attorney fees and expenses, and all other costs incurred by Seller. Purchaser shall pay the Georgia intangible taxes (if applicable), title insurance premium and fees, the cost of any survey Purchaser elects to have prepared, Purchaser's attorney fees and expenses,

5

and all other costs incurred by Purchaser.  Seller shall pay its own attorney's fees.  Any escrow fee shall be shared equally by Purchaser and Seller.

11.    CLOSING DOCUMENTATION.  The closing documentation shall include, but not be limited to, a limited warranty deed as to the Property, and a blanket transfer and assignment/bill of sale for all personal and intangible property owned by Seller located at the Property and used in conjunction with the operation thereof, including, without limitation, all of Seller's rights to any and all permits, licenses, surveys, plans, studies and contract rights related to the Property

12.    CLOSING.  Consummation and closing of this Agreement shall be on or before the date that is the later of (i) forty-five (45) days following the date of this Agreement or (ii) fourteen (14) days following formal approval of the sale to Purchaser by the Bankruptcy Court (the "Closing").  Possession of the property shall be granted at closing, unless otherwise specified herein.

13.    ENTIRE AGREEMENT.  This Agreement contains the entire agreement between the parties, and no representation, warranties, or promises, verbal or written, unless contained herein, shall be binding upon any party to this Agreement.  It is agreed that whenever a party or parties to this Agreement is mentioned, it shall include said party, its heirs, administrators, successors or assigns.  Time is of the essence of this Agreement.  This Agreement shall be construed under the laws of the State of Georgia.

14.    ESCROW AGREEMENT.   Seller and Purchaser acknowledge and agree that Escrow Agent shall promptly deposit the Earnest Money into an interest bearing escrow account having the Purchaser as the beneficiary thereof.  Seller and Purchaser acknowledge and agree that Escrow Agent shall have the right to disburse same and the interest earned thereon to Purchaser upon fourteen (14) days written notice to the parties, which notice shall identify the grounds on which Purchaser contends it is entitled to the Earnest Money; provided, however, that Escrow Agent shall not have received any written objections to such disbursement within fourteen (14) days after receipt by Seller of said notice.  Escrow Agent shall disburse the Earnest Money to Seller only upon order of the Bankruptcy Court or, if appeal is taken, by order of the appellate court to which appeal is taken. Seller and Purchaser acknowledge that the Escrow Agent shall have no liability to any party on account of its failure to disburse the Earnest Money in the event of an unresolved dispute as to which party is entitled to receive the same.  In the event of any dispute as to who is entitled to receive the Earnest Money and interest earned thereon, Escrow Agent shall have the right, at its sole election, either to retain the funds and disburse them in accordance with the final order of a court of competent jurisdiction or to deposit the Earnest Money with said court, pending a final decision of such controversy.  Seller and Purchaser each agree to, jointly and severally, indemnify and hold Escrow Agent harmless from and against any loss, cost or liability arising out of its good faith actions as escrow agent hereunder.  Seller and Purchaser further agree that Escrow Agent shall not be liable for failure of the depository and shall only be liable otherwise in the event of its gross negligence or willful misconduct.

15.    NOTICES.  All notices which are required or permitted hereunder must be in writing and shall be deemed to have been given, delivered or made, as the case may be,

(notwithstanding lack of actual receipt by the addressee) (i) when delivered by personal delivery or (ii) three (3) business days after having been deposited in the United States mail, certified or registered, return receipt requested, sufficient postage affixed and prepaid, or (iii) one (1) business day after having been deposited with an expedited, overnight courier service (such as by way of example but not limitation, U.S. Express Mail, Federal Express or Purolator), addressed to the party to whom notice is intended to be given at the address set forth below:

If to Purchaser:         _____
                         _____
                         _____
                         _____
                         _____

With a Copy to:          _____
                         _____
                         _____
                         _____
                         _____

If to Seller:            Grantville Mill, LLC
                         3098 Happy Valley Circle
                         Newnan, Georgia 30263
                         Attention: Larry Witt
                         Facsimile: _____

With a Copy to:          Lamberth, Cifelli, Stokes, Ellis & Nason, P.A.
                         3343 Peachtree Road, NE
                         Suite 550
                         Atlanta, Georgia 30326
                         Attention: G. Frank Nason, IV
                         Facsimile: (404) 262-9911

Any party may change the address to which its notices are sent by giving the other party seven (7) days prior written notice of any such change in the manner provided in this Section, but notice of change of address is effective only upon receipt.

16.    ATTORNEYS' FEES AND COSTS.  In the event of any litigation between the parties arising out of this Agreement or the collection of any funds due Purchaser or Seller pursuant to this Agreement, the prevailing party shall be entitled to recover all costs actually incurred, including without limitation reasonable attorneys' and paralegals' fees and costs, whether such fees and costs are incurred at trial, on appeal or in any bankruptcy proceedings. This provision shall survive the termination or expiration of this Agreement for one (1) year.

17.     <u>CALENDAR EVENT</u>.  In the event that the final date of any term or stipulation under this agreement shall fall on a weekend or legal holiday then the term shall not expire until the end of the first business day thereafter.

18.     <u>ASSIGNMENT</u>.  Purchaser may, without the consent of the Seller, assign its respective rights and/or obligations under this Agreement in whole or in part to any affiliate of Purchaser (i.e. an entity controlled by, controlling or under common control with Purchaser).

19.     <u>GOVERNING LAW</u>.  This Agreement shall be governed by the Laws of the State of Georgia.

20.     <u>COUNTERPARTS</u>.  This Agreement may be executed in counterparts each of which shall be deemed an original and all of which together shall be deemed one and the same document.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals as if the day and year first above written.

**<u>PURCHASER</u>:**

_____

By:_____
Name:_____
Title:_____

**<u>SELLER</u>:**

GRANTVILLE MILL, LLC

By:_____
Name:_____
Title:_____

8

**Certificate of Service**

This is to certify that the undersigned has served a true and correct copy of the foregoing MOTION FOR ENTRY OF ORDERS PURSUANT TO 11 U.S.C. §§ 105 AND 363 (A) AUTHORIZING AND SCHEDULING AN AUCTION AT WHICH THE DEBTOR WILL SOLICIT THE HIGHEST OR BEST BID FOR THE SALE OF SUBSTANTIALLY ALL OF ITS PROPERTY; (B) APPROVING BID PROCEDURES GOVERNING THE PROPOSED SALE; AND (C) APPROVING THE SALE OF THE PROPERTY TO THE PARTY SUBMITTING THE HIGHEST OR BEST BID by electronic mail to:

> Jeneane Treace
> 362 Richard Russell Building
> 75 Spring Street, S.W.
> Atlanta, GA 30303
> jeneane.treace@usdoj.gov

> John D. Andrle, Esq.
> McCurdy & Candler, LLC
> 250 E. Ponce de Leon Ave., Suite 600
> Decatur, GA 30030
> jandrle@mccurdycandler.com

> Donya M. Byrnside
> Parker, Hudson, Rainer & Dobbs LLP
> 1500 Marquis Two Tower
> 285 Peachtree Center Avenue NE
> Atlanta, Georgia 30303
> dmb@phrd.com

This 10th day of May, 2010

> /s/ _G. Frank Nason, IV_
> G. Frank Nason, IV

3343 Peachtree Road NE, Suite 550
Atlanta, Georgia 30326
(404) 262-7373